NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARY REVELL, | : | |
|     Plaintiff, | : | Civil Action No. 06-3210 (JAG) |
| | : | |
|     v. | : | **OPINION** |
| | : | |
| CITY OF JERSEY CITY; JERSEY CITY POLICE DEPARTMENT; HUGH DONAGHUE; DANIEL HALLERAN; JEREMIAH HEALY; EDWARD McGREEVY; KENNETH MOUNT; ROBERT TROY; and JOHN DOES 1-10, their identities not currently known, all jointly, severally and individually, | : | |
|     Defendants. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motions by defendants, City of Jersey City, Jersey City Police Department, Hugh Donaghue, Daniel Halleran, Jerremiah Healy[1], Edward McGreevy, Kenneth Mount, and Robert Troy (collectively "Defendants"), seeking the grant of summary judgment, pursuant to FED. R. CIV. P. 56(c), against plaintiff, Mary Revell ("Plaintiff"). For the reasons set forth below, the motion shall be granted.[2]

---

[1] The Verified Complaint refers to Defendant "Jeremiah Healy". In the Answer to the Verified Complaint, and in all subsequent defense submissions, the same defendant as referred to as "Jerremiah Healy".

[2] Defendants seek the grant of summary judgment, pursuant to FED. R. CIV. P. 56(c). Defendants Donaghue, Halleran, Healy, McGreevy, and Mount moved for summary judgment, collectively. (Docket Entry No. 30.) Defendant Troy and Defendants City of Jersey City and Jersey City Police Department filed their motions for summary judgment separately. (Docket

1

## I. <u>FACTUAL BACKGROUND</u>

The following facts are undisputed unless otherwise noted. Plaintiff is a police officer with the Jersey City Police Department. (Defendant Robert Troy's Statement of Material Facts ("Troy 56.1 Stmt.") ¶ 1.) She began her employment with the department in March 1998. (<u>Id.</u>) Plaintiff contends that on May 8, 2002, Jersey City awarded a contract without open and competitive bidding, to Consolidated Construction Management Services Corporation ("CCMS") to assist Jersey City with reference to the purchase of a new police radio communication system. (Plaintiff's Statement of Material Facts ("Pl. 56.1 Stmt.") ¶ 1.) According to Plaintiff, top police and CCMS officials were seeking to purchase a police radio communication system without the requisite open bidding process, by steering the contract to the Motorola Corporation. (Pl. 56.1 Stmt. ¶ 3.) The contract was to be given to the Motorola Corporation, without consideration of other companies who could potentially provide more efficient and cost-effective systems. (<u>Id.</u>)

Plaintiff, along with another officer, participated in an official investigation into the propriety of the radio communication system bid process. (Troy 56.1 Stmt. ¶ 8.) In connection with the investigation, Plaintiff submitted a Supplementary Investigative Report, dated January 11, 2005, to her commanding officer, alleging "Theft by Deception" against Jersey City. (<u>Id.</u> ¶ 11.)

---

Entry Nos. 29, 35.) Defendants also properly filed a statement of undisputed material facts, pursuant to Local Rule 56.1. At various instances in their briefs, however, Defendants ask this Court to dismiss Plaintiff's claims. The grant of summary judgment and the dismissal of the Complaint are inconsistent. This Court will disregard the references to the dismissal of Plaintiff's Complaint and treat Defendants' motion as one for the grant of summary judgment. See <u>Cheminor Drugs, Ltd. v. Ethyl Corp.</u>, 168 F.3d 119, 121 n.2 (3d Cir. 1999) ("[T]he grant of summary judgment and the dismissal of the complaint are inconsistent" procedurally. The resolution of a motion for summary judgment does not lead to a dismissal of the complaint, only the grant or denial of summary judgment.).

As a result of her participation in the investigation, Plaintiff believed that the bid process was being conducted in an improper fashion. (Pl. 56.1 Stmt. ¶ 5.) Based on that belief, in October 2004, Plaintiff sent a complaint letter to Richard J. Codey, Acting Governor of the State of New Jersey. (Pl. 56.1 Stmt. ¶ 11.) In the letter, Plaintiff stated, "I have enclosed for your review the police reports regarding the 14 million dollar federal 9-11 grant money. This fraud was reported to the Hudson County Prosecutor's Officer. But when they failed to prosecute (as that office often does) it was clear the pressure from high in the state was preventing this investigation." (Pl. 56.1 Stmt. ¶ 11.) On February 17, 2005, Plaintiff wrote a second letter to the Acting Governor, again apprising the Governor's Office of the alleged impropriety. (Pl. 56.1 Stmt. ¶ 13.)

Plaintiff also wrote at least three letters to the Office of the United States Attorney for the District of New Jersey, relating similar accusations. (Pl. 56.1 Stmt. ¶ 14.) In the third letter, dated December 21, 2004, Plaintiff wrote of the alleged "attempts to defraud the citizens in the Hudson County region of federally funded 9-11-01 grant [sic]." (Pl. 56.1 Stmt. ¶ 17.)

On or about January 12, 2005, Plaintiff met with Defendant Troy, Chief of Police of the Jersey City Police Department. (Pl. 56.1 Stmt. ¶ 29.) At that meeting, Defendant Troy told Plaintiff, "no more letters." (Pl. 56.1 Stmt. ¶¶ 29, 31.)

On October 12, 2005, Plaintiff was absent from work. (Pl. 56.1 Stmt. ¶ 38.) She contends that she "swapped her tour." (Id.) Plaintiff testified that she was required to furnish a report explaining her absence. (Id.) Plaintiff contends that other officers who do similar "swaps" were not required to document their absences. (Id.)

Plaintiff also asserts that on November 22, 2005, she met with Defendant Mount, the

Building Commander of the Municipal Court Complex.  (Pl. 56.1 Stmt. ¶ 41.)  According to Plaintiff, Defendant Mount "accused plaintiff of demeaning the Department and threatened to bring her up on charges."  (Id.)  Plaintiff also contends that Defendant Mount suggested that Plaintiff transfer from her assignment in the property room, a suggestion which Plaintiff refused.  (Pl. 56.1 Stmt. ¶ 42.)

Plaintiff contends that she met on other occasions with other department officials to discuss Plaintiff's involvement in the investigation, her report, and her letters.  (Pl. 56.1 Stmt. ¶¶ 44-45.)

On January 23, 2006, Plaintiff was transferred from her position in the property room to patrol duty in the Operations Division/West District.  (Pl. 56.1 Stmt. ¶ 53.)[3]

Following her transfer, Plaintiff initiated the instant action against Defendants, alleging claims of First Amendment retaliation, Equal Protection violations, 42 U.S.C. § 1985(3) conspiracy, and violations of the New Jersey Conscientious Employee Protection Act.  (Docket Entry No. 1.)  Defendants now move for summary judgment as to all of Plaintiff's claims.  (Docket Entry Nos. 29, 30, 35.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S.

---

[3] In her 56.1 Statement, Plaintiff refers to other instances of alleged retaliation, including the department's harassment of family members, and prohibition on Plaintiff from teaching police academy courses.  Upon review of the record, however, there is no admissible evidence in support of these allegations.

317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted).) Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v.

5

Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006).

### III. ANALYSIS

**A.    First Amendment Retaliation**

A plaintiff asserting a First Amendment retaliation claim must prove "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). "The first factor is a question of law; the second factor is a question of fact." Hill, 455 F.3d at 241 (citing Curinga v. City of Clairton, 357 F.3d 305, 310 (3d Cir. 2004)). If a plaintiff satisfies these two requirements, the burden then shifts to the defendant to show that the adverse action against plaintiff would have occurred even in the absence of the protected conduct. Hill, 455 F.3d at 241 n.23 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

A public employee's communication is protected by the First Amendment when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement

[s]he made." Hill, 455 F.3d at 241-42 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421 (ruling that memo written by a calendar deputy in the Los Angeles County District Attorney's Office was part of his official duties and, therefore, not protected).

The listing of a task in a formal job description, however, is "neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." Garcetti, 547 U.S. at 424-25 (noting that a government employer may not restrict an employee's speech simply "by creating excessively broad job descriptions."). Whether an employee's speech occurred in the office is not dispositive when analyzing whether plaintiff's speech was made pursuant to official duties. Garcetti, 547 U.S. at 420-21. Rather, a court should engage in a practical inquiry to determine whether a task is within the scope of the employee's professional duties. Id. at 420-21.

In the instant action, Defendants argue that Plaintiff's First Amendment retaliation claim must fail, as a matter of law, because the speech at issue was uttered pursuant to Plaintiff's official duties, as an officer of the Jersey City Police Department. In support of their argument, Defendants proffer the following facts: Plaintiff admits that the radio bid process investigation was an official police investigation, directed by Kevin Oras, in his official capacity as Captain of the Jersey City Police Department. (Deposition of Mary Revell, Exhibit 2 at 108:4-17, attached to Certification of Sean Joyce ("Joyce Cert.").) Plaintiff assisted in the investigation by submitting a Supplementary Investigative Report to her commanding officer. (See Exhibit 4,

7

attached to Joyce Cert.)[4]  Plaintiff refers to herself as a Jersey City police officer in nearly every single piece of correspondence sent to various public officials, regarding the investigation.  (See Exhibit 10, attached to Joyce Cert.)  The evidence included with the correspondence was gleaned from the official police investigation.

Finally, Defendants rely on the judgment of the district court in Oras v. Jersey City, No. 05-4003, 2008 WL 906344 (D.N.J. April 1, 2008) ("Oras I"), and the subsequent Third Circuit affirmation of that judgment in Oras v. Jersey City, No. 08-2277, 2009 WL 840604 (3d Cir. April 1, 2009) ("Oras II").[5]

Plaintiff contends that her speech is protected because when it was uttered, she was acting as a private citizen, and the speech touched on a matter of public concern.  This Court agrees that some of Plaintiff's speech, limited to those letters sent to various public officials, is protected by the First Amendment.

In reaching this decision, this Court is guided by the Supreme Court's decision in Pickering v. Board of Education, 391 U.S. 563 (1968).  Pickering considered the right of a high

---

[4] Plaintiff also preserved official investigation reports, drafted by Kevin Oras, in the Jersey City Police Department Property and Evidence Room.  Oras v. Jersey City, 2008 WL 906344 at *3.

[5] Oras I and Oras II concern the same investigation underlying the instant action.  A lawsuit was brought by Kevin Oras, then Captain of the Jersey City Police Department, against substantially similar defendants.  The suit alleged the same claims as the instant action, including a claim for First Amendment retaliation.  Mr. Oras led an official police investigation into the radio system bidding process.  In the course of that investigation, Mr. Oras questioned witnesses on police property and during business hours, and issued various internal memos and reports on his findings.  Mr. Oras gave those reports to a fellow police officer (who happens to be the Plaintiff in this action) to store in the Jersey City Police Department Property and Evidence Room.  The district court concluded, and the Third Circuit affirmed, that each of these actions was performed pursuant to Mr. Oras official duties.

school teacher to write a newspaper editorial critical of his employer school district's revenue raising process. In concluding that the newspaper editorial constituted protected speech, the Supreme Court noted that, "[t]eachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operations of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of [retaliation]." 391 U.S. at 572 (cited with approval in Garcetti, 547 U.S. at 421.)

This Court notes Defendants' vigorous attempts to compare the facts of this case with factual scenario present in Oras I and Oras II. Excepting the common characters and parties in these cases, the comparison is inapposite. In Oras I, the district court correctly concluded that Mr. Oras' investigative activities were performed in his official capacity, rather than as a private citizen. Indeed, in conjunction with his investigation, Mr. Oras issued internal police department memos, including "an official department incident report," and interviewed witnesses on police department property during business hours. Oras I, 2008 WL 906344, at * 3.[6]

In contrast, Plaintiff's letter-writing campaign does not fall within the ambit of her official duties. Unhappy with the internal handling of the investigation, Plaintiff effectively removed her officer uniform, and became an ordinary citizen, concerned and inspired to write to public officials that she believed could help. Her signature on one, signed "Mary Revell, Private Citizen", is telling of Plaintiff's frustration with the departmental response to the investigation, and her decision to speak out as an independent member of the community.

---

[6]Similarly, Plaintiff's official conduct, such as assisting in the investigation by storing evidence in the property room and writing the Supplementary Investigative Report, does not constitute protected speech.

Nonetheless, Plaintiff's First Amendment retaliation claim must fail. There is no evidence supporting Plaintiff's claims that she suffered retaliation. In her brief in opposition to the instant motion, Plaintiff asserts that her transfer from the Support Services Division/Property Room to patrol duty in the Operations Division/West District was Defendants' primary act of retaliation. There is, however, no evidence that this transfer resulted in any loss of status or benefits to Plaintiff.[7] Plaintiff retained her position as an employee of the Jersey City Police Department. Plaintiff's schedule, rank, and pay level remained the same. The change in Plaintiff's daily duties, combined with unsupported statements about the desirability of her former position, are insufficient to create a triable issue of fact.

An employee need not experience an actual adverse employment action in order to make out a claim of retaliation for protected speech. See Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000); see also Rutan, 497 U.S. at 76 n.8 (agreeing with the Seventh Circuit that the First Amendment "protects state employees . . . from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights' ").

Not all allegedly retaliatory actions are, however, sufficiently punitive to "deter a person

---

[7]In her Rule 56.1 Statement, Plaintiff claims that the transfer to the Operations Division/West District was a less preferred assignment. (Pl. 56.1 Stmt. ¶ 53.) Plaintiff fails, however, to evince how or why the transfer was less preferred, especially in light of the fact that she maintained the same schedule, rank, and pay level that she enjoyed working at her former post. The citations to the record that Plaintiff contends support her claim, in fact, state nothing more than that Plaintiff was transferred. (Deposition of Mary Revell, Exhibit B at 34:2-7, 114:9-13, attached to Certification of David C. Paige ("Paige Cert.").)

Plaintiff cites to her answer to an interrogatory, in which she calls "the West District . . . the busiest and most violent district in the Department." (Pl. 56.1 Stmt. ¶ 54.) Plaintiff puts forth no evidence to support this subjective statement.

of ordinary firmness from exercising his First Amendment rights." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (finding that the alleged retaliatory actions, verbal reprimands, and criticism of the plaintiff by his supervisor, were not sufficient to rise to the level of retaliatory harassment under the First Amendment). "The effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable but it must be more than *de minimis*." Id. (internal citations omitted). In McKee, the plaintiff was admonished on various occasions by his supervisor, but where the plaintiff did not suffer "any alteration in his employment benefits, pay, or job classification," the Third Circuit found no retaliation. Id. at 171. The Third Circuit contrasted that situation with Suppan where the plaintiff alleged a "campaign of retaliatory harassment", including a failure to promote. Id.

The Fifth Circuit decision in Serna v. City of San Antonio, 244 F.3d 479 (5th Cir. 2001), is also instructive on this point. In Serna, a police officer was transferred from the Downtown Foot and Bike Patrol Unit to a regular patrol unit after complaining that his supervisor was giving illegal orders. Id. at 480-81. The officer asserted claims for First Amendment retaliation and violations of the state whistle-blowing law. At trial, Officer Serna and his fellow officers testified that the Foot and Bike Patrol Unit was an elite unit in the police department, and a more desirable post than regular patrol. Id. at 483-84. The officers testified that they had no objective bases for their opinions, however, and that their statements were "only a matter of personal preference." Id. at 484. After reviewing the trial testimony, the Fifth Circuit concluded that "all Serna's testimony established was that he felt stigmatized and injured by his transfer" and that "[t]here was no evidence to suggest that a transfer to a regular patrol unit was generally considered to be a demotion or any kind of punishment." Id. at 484.

> In rejecting Officer Serna's retaliation claims, the Fifth Circuit concluded,
>
> it is insufficient for a plaintiff to show merely that he has been transferred from a job he likes to one that he considers less desirable. Rather, a plaintiff must produce enough evidence to allow a reasonable trier of fact to conclude that, when viewed objectively, the transfer caused harm to the plaintiff, sufficiently serious to constitute a constitutional injury .... [t]he personal preferences and subjective perceptions of the plaintiff are insufficient to establish that his transfer inflicted a constitutional injury.

Id. at 483 (internal citations omitted).

Likewise, in the instant action, Defendants' alleged conduct does not rise to an actionable level, under the First Amendment. Plaintiff's transfer and the alleged comments and behavior directed towards her do not amount to punitive conduct that would deter a person of ordinary firmness from exercising her free speech rights.

Considering all of the evidence presented in the light most favorable to Plaintiff, this Court finds that she has failed to show that the transfer was anything more than a neutral change to a position that she subjectively deemed to be less desirable. Like the plaintiff in Serna, Plaintiff has offered no evidence of altered status or rank, but rather offered only her own perceptions of the dangerousness of her new position. Such subjective perceptions do not amount to an offense against the First Amendment. Defendants are entitled to summary judgment as to Plaintiff's First Amendment retaliation claim.

**B.     Equal Protection**

In the instant action, Plaintiff does not assert a valid equal protection claim under § 1983 as it simply recasts her First Amendment claim. See Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997); see also Oras II, 2009 WL 840604, at *2. Plaintiff's equal protection claim is that Defendants acted to "punish, retaliate and stifle plaintiff's protests and criticism of their

abuse of power and wrongdoing, by singling [Plaintiff] out, treating her as separate, apart, and unequal to others in the Department, and by harassing and discriminating against her ." (Ver. Compl. ¶ 75.)  This claim is a mere recapitulation of Plaintiff's First Amendment claim, which states that she was "subjected to harassment, discriminatory action and other retaliation" as a result of his "protests, complaints, comments and opposition" to the police radio system bidding process. (Ver. Compl. ¶ 67.)

Plaintiff's First Amendment and Equal Protection claims allege retaliation as a direct consequence of Plaintiff's speech.  Indeed, the facts supporting these claims focus on retaliation for Plaintiff's communications attempting to uncover and disclose possible wrongdoing with reference to the radio system bidding process.  (See Ver. Compl. ¶¶ 24-64.)  A separate case of action is inappropriate where Plaintiff's claim is properly analyzed under the First Amendment lens.  Oras II, 2009 WL 840604, at *2.  Defendants are entitled to summary judgment as to Plaintiff's Equal Protection claim.

C. **Conspiracy Claim Under 42 U.S.C. § 1985(3)**

In Count III of the Verified Complaint, Plaintiff alleges that Defendants conspired to deprive her of "rights guaranteed to her under the Constitution and the laws of the United States in violation of § 1985."  (Ver. Compl. ¶ 80.)

In order to state a claim under § 1985(3), a plaintiff must allege:

(1) a conspiracy;
(2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws;
(3) an act in furtherance of the conspiracy; and
(4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).  Section 1985(3) actions are limited to conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus."  Lake, 112 F.3d at 685 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Here, Plaintiff's § 1985(3) conspiracy claim is subject to the grant of summary judgment, because Plaintiff fails to establish that she is a member of a protected class.  Plaintiff's § 1985(3) conspiracy claim rests solely on the theory that she is a member of a First Amendment class.  (Opp'n Def.'s Mot. Summ. J. 30.)  As this Court holds that Plaintiff is not entitled to First Amendment protection, she cannot be part of a First Amendment class for § 1985(3) purposes.[8]  Defendants are entitled to summary judgment on Plaintiff's § 1985(3) claim.

**D.     New Jersey Conscientious Employee Protection Act**

Defendants also move for summary judgment as to Plaintiff's claim under the New Jersey Conscientious Employee Protection Act ("CEPA"), arguing that there no facts to support such a claim.

The CEPA, codified at N.J. STAT. ANN. § 34:19-3, provides protection to employees that report illegal or unethical workplace activities.  Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003).  "A plaintiff who brings a cause of action pursuant to [N.J. STAT. ANN. §] 34:19-3c must demonstrate that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in [N.J. STAT. ANN. §] 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal

---

[8]The § 1985(3) factors required to make out a claim are conjunctive.  Plaintiff fails to establish several of the factors; however, the failure to establish membership in a protected class is, in itself, sufficient to defeat the claim.

connection exists between the whistle-blowing activity and the adverse employment action." Id. Although a plaintiff need not allege that a violation of law in fact occurred, he or she must allege facts "identify[ing] a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." Id.

As discussed earlier, there is no evidence that Plaintiff suffered an adverse employment action. Defendants are entitled to summary judgment as to Plaintiff's CEPA claim.

## IV.  **CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment shall be granted.


        S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Date: September 28, 2009